IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HUGH M. ELLIS,<br><br>        Plaintiff,<br><br>v.<br><br>RK ENDEAVORS SPRINGFIELD, LLC<br>d/b/a CBD AMERICAN SHAMAN,<br>and<br>SHAMAN BOTANICALS, INC.,<br><br>        Defendants. | Case No. 6:19-cv-03377-SRB |

**DEFENDANT SHAMAN BOTANICALS, INC.'S**
**SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant Shaman Botanicals, Inc. submits the following suggestions in opposition to Plaintiff Hugh Ellis' Motion to Remand and Assess Costs and Expenses (Doc. #6), filed November 12, 2019.

### Introduction

Plaintiff claims that Shaman Botanicals unlawfully possessed and distributed hemp-based CBD products because it received those products outside the State of Missouri from a third-party manufacturer through interstate commerce. Taken to their logical conclusion, these claims would prevent Missouri companies like Shaman Botanicals from ever conducting hemp-related business in interstate commerce. This violates the 2018 Farm Bill, which expressly prohibits States from interfering with transportation and shipment of hemp in interstate commerce. Because Plaintiff's claims raise this substantial federal issue, the Court has subject matter jurisdiction over the case. Plaintiff's Motion to Remand should therefore be denied.

**Argument and Authorities**

Plaintiff's motion focuses almost entirely on the matter of complete preemption, all but ignoring the fact that federal question jurisdiction separately arises when "an issue of federal law is a necessary and central element of plaintiff's state law claims." *Palazzolo v. Harris-Stowe State Univ.*, No. 4:16-CV-00826, 2106 WL 3878470, at *2 (E.D. Mo. July 18, 2016). This separate basis for federal jurisdiction is often called the substantial-federal-question doctrine. *See, e.g.*, *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 981 (W.D. Tenn. 2014) ("[U]nder the substantial-federal-question doctrine, federal question jurisdiction exists when 'the state-law claim necessarily states a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing the balance of federal and state judicial responsibilities.'" (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308 (2005)) (internal brackets omitted)). In responding to the motion to remand, Shaman Botanicals will not argue complete preemption, but will instead focus on the separate standard for establishing federal jurisdiction based on the substantial question of federal law inherent in Plaintiff's claims.

**I.    The Court Should Deny the Motion to Remand Because Plaintiff's Claims Against Shaman Botanicals Involve a Substantial Federal Question that Supports Federal Jurisdiction**

The federal question statute states that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is well recognized that "a state law cause of action may arise under federal law where 'the vindication of a right under state law necessarily turns on some construction of federal law.'" *Dooley*, 39 F. Supp. 3d at 982 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983) (internal brackets omitted)). In that situation, "state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right

to relief necessarily depends on resolution of a substantial question of federal law.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Franchise Tax Bd.*, 463 U.S. at 28); *see also* 36 C.J.S. *Federal Courts* § 98 (2014) ("Even when a right of action is created by state law, if it requires resolution of significant issues of federal law, it may 'arise under' federal law so as to be one over which a court can exercise federal question jurisdiction.").

The jurisdictional analysis utilizes a four-part test: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "If the *Gunn* test is met, a case 'aris[es] under federal law regardless of whether the cause of action itself has its genesis in state law.'" *Pagidas v. Buster*, No. 16-390S, 2016 WL 11545018, at *4 (D.R.I. Nov. 16, 2016) (quoting *R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 50 (1st Cir. 2009)). Here, all four requirements for the exercise of federal jurisdiction are satisfied.

**Plaintiff's claims necessarily raise an issue of federal law.** As outlined in the Notice of Removal (Doc. #1), Plaintiff alleges that Shaman Botanicals unlawfully possessed and unlawfully distributed "hemp extract" because it obtained hemp-based CBD products from sources outside the Missouri Department of Agriculture's registration system for "cultivation and production facilities" and "cannabidiol oil care centers." (*See* Petition, Doc. #1-1, ¶¶ 22-30, 35, 39.) This core allegation sets the foundation for each claim asserted by Plaintiff against Shaman Botanicals. (*See id.* ¶¶ 54, 62, 72, 82-84.) As discussed below, Plaintiff's claims necessarily raise an issue of federal law regarding operation and application of the Agricultural Act of 2014 (the "2014 Farm Bill") and the Agricultural Act of 2018 (the "2018 Farm Bill").

3

Case 6:19-cv-03377-SRB   Document 12   Filed 12/10/19   Page 3 of 11

The products at issue in this case are two 60-count bottles of concentrated hemp oil capsules that Plaintiff allegedly purchased in July 2019. (Petition, Doc. #1-1, ¶¶ 7, 11.) These products were lawfully manufactured by a separate company (Elixinol LLC) outside the State of Missouri using legally grown hemp. (Declaration of Stephen Vincent Sanders, attached as **Exhibit 1**, ¶ 2.) The products were delivered through interstate commerce from the State of Colorado for eventual sale to Plaintiff by an independent retailer (Defendant RK Endeavors Springfield, LLC) in Springfield, Missouri. (*Id.*)

The Petition characterizes the hemp-based CBD products as "hemp extract" and targets every aspect of Shaman Botanicals' operation beginning with possession of the purported hemp extract.[1] Paragraph 22 alleges that possession of hemp extract is controlled by Missouri's Comprehensive Drug Control Act; Paragraphs 35 and 39 allege that Shaman Botanicals unlawfully possessed hemp extract because it was not licensed by the State of Missouri as a "cannabidiol care center"; and Paragraphs 54(b), 61 and 72(b) allege that Shaman Botanicals violated the Missouri Merchandising Practices Act and Missouri common law by "[m]isrepresenting itself to the public, including Plaintiff, as a business authorized by the State of Missouri to lawfully . . . possess hemp and hemp extract." (*See* Doc. #1-1.)

The Petition notes that Shaman Botanicals has its principal place of business in Kansas City, Missouri. (Doc. #1-1 ¶ 2.) By alleging that Shaman Botanicals unlawfully possessed hemp-based CBD products shipped to Missouri from Colorado, Plaintiff's theory of liability necessarily restricts Shaman Botanicals from ever receiving out-of-state product shipments at its Missouri

---

[1] Shaman Botanicals denies that its hemp-based CBD products—including the concentrated hemp oil capsules allegedly purchased by Plaintiff—constitute "hemp extract" subject to the Missouri Department of Agriculture's regulations regarding "cultivation and production facilities" and "cannabidiol oil care centers." (*See* Sanders Decl, **Ex. 1**, ¶ 3.) For purposes of the remand motion, however, Plaintiff's allegations in that regard are taken at face value.

headquarters or otherwise using normal channels of interstate commerce to conduct its business. With these and other allegations regarding unlawful distribution of hemp-based CBD products (*see, e.g.*, *id.* ¶¶ 54(c), (e), (h)-(i)), Plaintiff's theory of liability seeks to establish a closed system in which all activities culminating in the sale of hemp-based CBD products in Missouri must occur within the State in strict accordance with Missouri law.

Plaintiff's claims are inherently federal in nature because it is impossible to resolve those claims without applying controlling federal law permitting transportation and shipment of hemp-derived CBD products in interstate commerce. In the 2014 Farm Bill, low-THC industrial hemp (i.e., the type used to make CBD products) was removed from the federal Controlled Substances Act and States were allowed to establish agricultural pilot programs for hemp production. *See* 7 U.S.C. § 5940; *see also United States v. Mallory*, 372 F. Supp. 3d 377, 381-82 (S.D.W. Va. 2019) (summarizing 2014 Farm Bill).

The 2018 Farm Bill confirmed the removal of hemp and THC in hemp from the list of controlled substances. *See* 21 U.S.C. § 802(16)(B)(i); *id.* § 812(c)(17). Significantly, the 2018 Farm Bill also expressly provides that States cannot "prohibit the transportation or shipment of hemp or hemp products" lawfully produced in other States. Agricultural Improvement Act of 2018, Pub. L. No. 115-334, § 10114(b), 132 Stat. 4490, 4914 (2018). The General Counsel of the United States Department of Agriculture recognizes that "this provision preempts State law to the extent such State law prohibits the interstate transportation or shipment of hemp that has been [lawfully produced]." Legal Opinion on Certain Provisions of the Agriculture Improvement Act of 2018 Relating to Hemp, at 7 (May 28, 2019).[2]

---

[2] The Notice of Removal included a hyperlink to this opinion. (*See* Doc. #1 ¶ 7.) The opinion is also attached as Exhibit 1 to Plaintiff's Suggestions in Support of Motion to Remand (*See* Doc. #7-1.)

The intent and practical implication of the 2018 Farm Bill is clear: it "allows for the interstate transportation and shipment of hemp in the United States." Establishment of a Domestic Hemp Production Program, 84 Fed. Reg. 58,522, 58,523 (Oct. 31, 2019). Plaintiff correctly asserts in his Motion to Remand that States retain some ability under the 2018 Farm Bill to regulate hemp, but the power is limited: "the 2018 Farm Bill preserves the authority of States . . . to enact and enforce laws regulating the **production** (but not the interstate transportation or shipment) of hemp . . . ." Legal Opinion, Pltf's Ex. 1 (Doc. #7-1), at 2. Because Plaintiff's claims seek to apply Missouri law in a manner that goes far beyond regulating the *production* of hemp within the State by restricting possession/distribution of hemp-based CBD products manufactured and shipped from outside the State, those claims are at odds with the 2018 Farm Bill. This demonstrates that the claims necessarily raise an issue of federal law. *See Franchise Tax Bd.*, 463 U.S. at 10 ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law."); *see also Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:08-CV-26, 2008 WL 11342543, at *2 (E.D. Tenn. June 13, 2008) (finding federal jurisdiction over state law claim that "cannot be resolved without determining the construction and application of federal law").

Plaintiff's discussion of *In re Dicamba Herbicide Litigation*, No. 1:18-md-2820-SNLJ, 2018 WL 2447792 (E.D. Mo. May 31, 2018), misses the point. The claims in that case all stemmed from the narrow and limited allegation that defendant "was negligent—under Missouri law—due to product labeling shortcomings." *Id.* at *2. Here, the claims are much broader—Plaintiff does allege that the CBD capsules were "misbranded" because of information missing from the product label (*see, e.g.*, Doc. #1-1 ¶ 54(j)), but he also alleges tortious conduct based on unlawful possession and distribution of the product (*see, e.g., id.* ¶¶ 54(a)-(i)). It is these additional claims,

which comprise the vast majority of Plaintiff's allegations, that implicate federal law and support federal jurisdiction.

Moreover, the peripheral federal issue in *Dicamba* involved a defense that was not certain to be raised in that case. 2018 WL 2447792, at *3. The federal issue here is much different—it speaks directly to the permissible contour and scope of Plaintiff's claims, which are only actionable to the extent they do not interfere with transportation and shipment of hemp products via interstate commerce. *Dicamba* is also of limited utility because the court in that case refused to go beyond the pleadings in assessing the existence of a substantial federal question. *Id.* at *2. The substantial-federal-question doctrine is an exception to the well-pleaded complaint rule the normally confines jurisdictional examination to the face of the petition/complaint. *Pagidas*, 2016 WL 11545018, at *4 ("In applying the *Gunn* test . . . , this Court need not restrict itself to the words that [plaintiff] chose to use in her pleading. Rather, the Court may, indeed must, look beyond the face of the complaint . . ."); *see also Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-cv-3037(SRN/LIB), 2015 WL 3915687, at *7 (D. Minn. June 25, 2015); *Stratienko*, 2008 WL 11342543, at *3; *Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 559-61 (E.D. Tex. 2000). Looking beyond the petition in this case highlights the substantial federal question underpinning Plaintiff's claims and demonstrates that the exercise of federal jurisdiction is appropriate.

Given the nature of Plaintiff's claims and the core federal issue inherent in those claims, the Court should find that the first requirement for federal jurisdiction based on a substantial federal question is satisfied.

**The issue of federal law in this case is actually disputed and substantial**. The motion papers highlight the parties' significant difference of opinion regarding interpretation and appli-

7
Case 6:19-cv-03377-SRB   Document 12   Filed 12/10/19   Page 7 of 11

cation of the 2018 Farm Bill, which goes to the heart of a significant federal interest in preventing state law from impeding on interstate commerce. *United States v. Le*, 902 F.3d 104, 113 (2d Cir. 2018) ("Regulating the instrumentalities of interstate commerce is also a matter of strong federal interest, one not traditionally left principally to the States." (internal citations omitted)); *see also Kassel v. Consolidated Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (noting that the Commerce Clause is a "prolific source of national power and an equally prolific source of conflict with legislation of the states" and that a State "trespasses upon national interests" when it interferes with interstate commerce).

Under the circumstances, the Court should easily find that the second and third requirements for federal jurisdiction are satisfied because this case involves an actual dispute concerning a substantial federal issue. *See, e.g.*, *Dooley*, 39 F. Supp. 3d at 986 (finding actual and substantial dispute concerning interpretation of federal statutes).

**The issue of federal law in this case is capable of resolution in federal court without disrupting the federal-state balance approved by Congress.** The substantial-federal-question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. Matters of interstate commerce are historically reserved for federal determination and are best considered in federal court. *See Milan Express Co., Inc. v. W. Sur. Co.*, 886 F.2d 783, 787 (6th Cir. 1989) ("The historical federal interest in the regulation of interstate commerce persuades us that plaintiffs' claims . . . should be heard in a federal forum that possesses substantial expertise in matters of interstate commerce.").

Here, the importance of a federal forum is magnified because the 2018 Farm Bill is newly adopted and open to novel questions of interpretation. This Court is best suited to consider the interplay between the 2018 Farm Bill and Plaintiff's claims in this case in a manner that will promote national uniformity, provide definitive resolution and respect the historical federal interest in matters of interstate commerce.

Given the substantial and unique federal interest in matters of interstate commerce, coupled with the fact that exercising federal jurisdiction on the specific facts of this case is not likely to open the flood gates to federal court, the Court should find that the fourth requirement for federal jurisdiction is satisfied because this case is capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Mitchell v. Osceola Farms Co.*, 408 F. Supp. 2d 1275, 1280 (S.D. Fla. 2005) (exercising federal jurisdiction based on substantial federal question of immigration regulation, which "would not open the flood gates and disturb any congressionally approved balance of federal and state judicial responsibilities").

Although cases satisfying the substantial-federal-question doctrine may be the exception, the Eighth Circuit recognizes that "[i]f [the plaintiff's] right to relief necessarily depends on the resolution of a disputed and substantial question of federal law, then the district court correctly denie[s] [a] motion to remand." *Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). All requirements for federal jurisdiction under the doctrine are satisfied in this case. The Court should therefore deny Plaintiff's Motion to Remand and keep jurisdiction over the matter. *See Hickman v. Alpine Asset Mgmt. Grp., LLC*, 919 F. Supp. 2d 1038, 1040-41 (W.D. Mo. 2013) ("[F]ederal courts should be equally vigilant to protect the right to proceed in Federal court as to permit the state courts, in proper cases to retain their own jurisdiction.").

## II. Even if the Court Grants the Motion to Remand, the Request for Fees and Expenses Should be Denied

Plaintiff requests fees and expenses incurred as a result of improper removal pursuant to 28 U.S.C. § 1447(c). If the Court denies the motion to remand, it follows that this request should also be denied. But even if the Court grants the motion to remand, it still should not award fees or expenses to Plaintiff.

"[A]bsent unusual circumstances, an award is appropriate 'only where the removing party lacked an objectively reasonable basis for seeking removal. . . . [W]hen an objectively reasonable basis exists, fees should be denied.'" *Fisher v. Spire Mo., Inc.*, No. 4:18-00869-NKL, 2019 WL 927728, at *3 (W.D. Mo. Feb. 26, 2019) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Here, the arguments and authorities outlined above demonstrate an objectively reasonable basis for asserting federal jurisdiction under the substantial-federal-question doctrine. Even in cases where courts have disagreed that a substantial federal question exists and a motion for remand is granted, fee awards have been denied. *See, e.g.*, *Roller v. Glazer's Distribs. of Mo.*, No. 4:16cv0022 CDP, 2016 WL 2609804, at *4 (E.D. Mo. May 6, 2016) ("Although the defendants' argument that a question of federal law was involved was not ultimately persuasive, they did not lack an objectively reasonable basis for making the argument. Therefore, I will deny [the] motion for attorney fees."). This Court should make a similar ruling in this case if it ultimately decides to grant the motion to remand.

## Conclusion

For the foregoing reasons, Defendant Shaman Botanicals, Inc. respectfully requests that the Court deny Plaintiff's Motion to Remand in all respects.

Respectfully submitted,

SHANK & MOORE, LLC

By: _/s/ Stephen J. Moore_
    Stephen J. Moore    MO #59080
    1968 Shawnee Mission Pkwy, Suite 100
    Mission Woods, Kansas 66205
    Telephone: 816.471.0909
    Facsimile: 816.471.3888
    sjm@shankmoore.com

-and-

THE PORTO LAW FIRM

By: _/s/ Nicholas J. Porto_
    Nicholas J. Porto    MO #56938
    1600 Baltimore, Suite 200A
    Kansas City, Missouri 64108
    Telephone: 816.463.2311
    Facsimile: 816.463.9567
    nporto@portolaw.com

*Attorneys for Defendant Shaman Botanicals, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 10th day of December, 2019, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff Hugh M. Ellis**
Timothy A. Ricker
Steven J. Blair
HALL ANSLEY, PC
3275 East Ridgeview
Springfield, Missouri 65804

        _/s/ Stephen J. Moore_
        Attorney for Defendant